UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

PAMELA K. GUNDERSON,

    Plaintiff,

  v.

MICHAEL J. ASTRUE,

    Defendant.

No. C06-1280MJP

ORDER ON SOCIAL SECURITY APPEAL

Plaintiff Pamela K. Gunderson proceeds through counsel in her appeal of a final decision of the Commissioner of the Social Security Administration (Commissioner). The Commissioner denied Plaintiff's application for Supplemental Security Income (SSI) benefits after a hearing before an Administrative Law Judge (ALJ).

The Court has reviewed the ALJ's decision, the administrative record (AR), and all memoranda of record. Being fully informed, the Court ORDERS that the ALJ's decision be REVERSED. The Court finds that the record supports a determination that Plaintiff is disabled. The Court REMANDS this matter with instructions to the Commissioner to make a prompt determination on whether Plaintiff meets the non-disability requirements for SSI benefits during the relevant time period. Provided that Plaintiff meets the non-disability requirements, she shall be entitled to an immediate award of SSI benefits.

The reasons for the Court's order are set forth below.

ORDER - 1

**Facts and Procedural History**

1. Plaintiff's First Application for Benefits

Plaintiff first applied for SSI benefits in 1998. She alleged disability due to back pain, migraines headaches, hypertension, and a stroke. (AR 333.) After her claim was denied, she requested a hearing before an administrative law judge. ALJ Thomas Robinson held a hearing on February 1, 2000, where Plaintiff was represented by counsel.

In a decision issued May 24, 2000, ALJ Robinson found Plaintiff had been disabled since March 6, 1998. (AR 329-38.) Specifically, he found that while Plaintiff could perform light work, she had moderate limitations in concentration and stress tolerance and her headaches and depression would cause work absences of greater than one day per week. Due to these limitations, the ALJ found that she could not perform any work that exists in significant numbers in the national economy.

However, the ALJ also indicated that his decision "specifically does not address non-disability requirements" for SSI eligibility. (AR 337.) He stated:

> I note that a person alleging to be the claimant's mother-in-law phoned the agency and indicated that the claimant lived with her "well healed" husband. The claimant testified that she was separated but admitted that her husband earned from $125,000 to $150,000 per year. Under these circumstances, it is likely that the claimant has or will have access to income and/or resources beyond the supplemental security income minimums. This should be carefully checked prior to determining eligibility.

Id. The decision also provided that "[t]he component of the Social Security Administration responsible for authorizing Supplemental Security Income payments will advise the claimant regarding the nondisability requirements for these payments, and if eligible, the amount and the months for which payment will be made." (AR at 338.)

2. Termination of Benefits

It is not entirely clear whether Plaintiff demonstrated financial eligibility for SSI benefits after ALJ Robinson's decision. The record includes a letter Ms. Gunderson wrote in December 2001 where she suggests that her SSI payments were terminated because she was also receiving workers'

ORDER - 2

compensation benefits. (AR 362.) Although agency records indicate that her SSI benefits were terminated in April 2001 (AR 410), the record does not include a copy of her termination notice.

3. <u>Second Application for Benefits</u>

On August 20, 2001, Ms. Gunderson reapplied for SSI benefits. She was not represented by an attorney. The application was denied on the grounds that she was not disabled, notwithstanding ALJ Robinson's decision in May 2000. She requested an administrative hearing.

In March 2004, ALJ Arthur Joyner held a hearing on Plaintiff's second application.[1] (AR 658-82.) Plaintiff appeared pro se. On December 3, 2004, ALJ Joyner issued a decision that found Plaintiff was not disabled. (AR 27-39.)

Plaintiff appealed ALJ Joyner's decision to the Social Security Appeals Council. While that appeal was pending, Plaintiff retained counsel. On June 30, 2006, the Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner. (AR 12.)

**Analysis**

The Social Security Administration follows a five-step sequential evaluation process for determining whether a claimant is disabled:

1. At step one, it must be determined whether the claimant is gainfully employed. Here, the ALJ found that Plaintiff was not gainfully employed.

2. At step two, it must be determined whether a claimant suffers from a severe impairment. The ALJ found that Plaintiff suffered from several severe impairments.

3. Step three asks whether a claimant's impairments meet or equal a "listed impairment." The ALJ found that Plaintiff's impairments did not meet or equal a listed impairment.

4. If a claimant's impairments do not meet or equal a listing, the Commissioner must assess residual functional capacity (RFC) and determine at step four whether the claimant has demonstrated an inability to perform past relevant work. The ALJ

---

[1] The record is somewhat ambiguous regarding the date of this hearing. ALJ Joyner's decision stated that the hearing was held on March 26, 2004. (AR 30.) The notice of hearing in the record also indicates a March 26th hearing date. (AR 40.) However, the transcript from the hearing indicates that it was held on March 6, 2004. (AR 658, 660.)

ORDER - 3

> assessed Plaintiff's RFC and found that she could not perform her past relevant work, which included work as a groundskeeper/landscaper and retail cashier.
>
> 5. If a claimant demonstrates an inability to perform past relevant work, the burden shifts to the Commissioner to demonstrate at step five that the claimant retains the capacity to make an adjustment to work that exists in significant levels in the national economy. At step five, the ALJ found that Plaintiff could adjust to other work, including work as a parking lot cashier, clerical sorter, or document preparer.

Plaintiff alleges that the ALJ committed errors at step two and step five. She also alleges that the ALJ erred in assessing her RFC and in rejecting certain medical evidence. In addition, she argues that the ALJ violated her due process rights and failed to fully and fairly develop the record.

A district court's review of an ALJ's decision is limited to whether the decision is in accordance with the law and the findings supported by substantial evidence in the record as a whole. See Penny v. Sullivan, 2 F.3d 953, 956 (9th Cir. 1993). Substantial evidence means more than a scintilla, but less than a preponderance; it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Magallanes v. Bowen, 881 F.2d 747, 750 (9th Cir. 1989). If there is more than one rational interpretation, one of which supports the ALJ's decision, the Court must uphold that decision. Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002).

Here, it should be noted at the outset that ALJ Robinson found that Plaintiff was disabled in May 2000, although he did not determine whether Plaintiff was financially eligible for SSI. In his December 2004 decision, ALJ Joyner stated that ALJ Robinson's decision was the "law of the case," but found that Plaintiff was no longer disabled because she had "medically improved."

The record is unclear regarding any determinations regarding Plaintiff's financial eligibility for SSI benefits following ALJ Robinson's May 2000 decision. At the second hearing in 2004, ALJ Joyner did not explore this issue in any depth. Instead, he asserted that "it appears the claimant never received any SSI payments." However, agency records indicate that Plaintiff's benefits were "terminated" in April 2001. (AR 410.) Logically, the agency would not have used the word "terminated" if Plaintiff had never received any SSI payments.

ORDER - 4

The fog surrounding this issue creates significant questions. Although not discussed by either side, the Ninth Circuit has held that a claimant who reapplies for SSI benefits within one year after his benefits are suspended for non-medical reasons is entitled to a presumption of continuing disability. See Warren v. Bowen, 804 F.2d 1120, 1121 (9th Cir. 1986). In such cases, "the applicant need not resubmit evidence of his disability" when he reapplies for benefits. Id. Here, the record appears to indicate that Plaintiff's SSI benefits were terminated in April 2001 and she reapplied for benefits in August 2001. If Plaintiff's benefits were terminated in April 2001 for non-medical reasons, it is possible that Plaintiff was not obliged to resubmit evidence of her disability in her second application.

Unfortunately, the Court cannot determine from the record why Plaintiff's benefits were terminated in April 2001. Although the record includes a letter that Plaintiff wrote in December 2001 suggesting that her benefits were terminated because she had also been receiving workers compensation benefits (AR 362), the record does not include any Social Security Administration records revealing the reason for the termination. As a result, the Court must put this issue to one side and focus on whether the ALJ's decision was supported by substantial evidence and free of legal error.

1.   Due Process Violations

Plaintiff's first argument is that ALJ Joyner violated her due process rights by considering two medical reports that were received into evidence post-hearing without providing Plaintiff with an opportunity to review and respond to those reports. Plaintiff notes that the Social Security Commissioner's guidelines to ALJs (known as the "HALLEX" guidelines) prohibit this practice. Although Plaintiff acknowledges that the HALLEX guidelines do not have the force of law, she argues that the guidelines reflect basic due process principles.

The Court agrees with Plaintiff. The Second Circuit has held that "[u]se of . . . a post-hearing report violates a claimant's due process rights." Townley v. Heckler, 748 F.2d 109, 114 (2d Cir. 1984). Similarly, the Tenth Circuit has held that "[a]n ALJ's use of a post-hearing medical report constitutes a denial of due process because the applicant is not given the opportunity to cross-examine

the physician or rebut the report." Allison v. Heckler, 711 F.2d 145, 147 (10th Cir. 1983). In response to Plaintiff's argument, the Commissioner suggests that there was no due process violation because Plaintiff had the chance to contest the post-hearing evidence when she appealed the ALJ's decision to the Appeals Council. However, the Commissioner cites no authority to support this contention.

Plaintiff suggests that the due process violation should result in an immediate award of benefits. However, Plaintiff provides no authority for this assertion and other courts have rejected arguments that a due process violation compels an immediate award of benefits. See, e.g., Bush v. Commissioner, 2000 WL 1673118 at * 2 (D. Or. Nov. 6, 2000). At most, this due process violation would entitle Plaintiff to a remand for a new hearing.

2.   The ALJ Did Not Fully and Fairly Develop the Record

Plaintiff next argues that ALJ Joyner violated his duty to fully and fairly develop the record. As Plaintiff notes, ALJ Joyner repeatedly noted the absence of medical records regarding Plaintiff's treatment since her first hearing in 2000. The ALJ appeared to rely on the absence of these medical records to support his finding that Plaintiff had medically improved.

The Ninth Circuit has held that "the ALJ has 'a special duty to fully and fairly develop the record and to assure that the claimant's interests are considered.'" Widmark v. Barnhart, 454 F.3d 1063, 1068 (9th Cir. 2005). "When the claimant is unrepresented . . . the ALJ must be especially diligent in exploring for all the relevant facts." Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001). "Ambiguous evidence, or the ALJ's own finding that the record is inadequate to allow for proper evaluation of the evidence, triggers the ALJ's duty to 'conduct an appropriate inquiry,'" which may include subpoenaing or submitting questions to the claimant's physicians, continuing the hearing, or keeping the record open after the hearing to allow supplementation of the record. Id.; see also Widmark, 454 F.3d at 1069 (ALJ violated duty by failing to seek additional evidence to fill perceived gap in record).

ORDER - 6

Here, although Plaintiff offered testimony regarding medical treatment she had received since the first ALJ decision in 2000, ALJ Joyner repeatedly noted the lack of records to support Plaintiff's testimony regarding such treatment. Given Plaintiff's pro se status, the ALJ erred by not making greater efforts to fully and fairly develop the record, such as by subpoenaing medical records or submitting questions to Plaintiff's physicians.

3. <u>The ALJ Erred at Step Two in Determining Plaintiff's Severe Impairments</u>

At step two of the five-step sequential inquiry, the ALJ determines whether the claimant has a medically severe impairment or combination of impairments. "[T]he step two inquiry is a de minimis screening device to dispose of groundless claims." <u>Smolen v. Chater</u>, 80 F.3d 1273, 1290 (9th Cir. 1996). "An impairment or combination of impairments can be found 'not severe' only if the evidence establishes a slight abnormality that has 'no more than a minimal effect on an individual's ability to work.'" <u>Id</u>. An ALJ is also required to consider the "combined effect" of an individual's impairments on her ability to function, without regard to whether each alone was sufficiently severe. <u>Id.</u>

In this case, the ALJ found at step two that Plaintiff's back impairment, pain disorder, and personality disorders were severe impairments, Plaintiff argues that the ALJ erred because he did not find that her migraines, hypertension, depression, incontinence, and kidney stones were also severe impairments.

As Plaintiff notes, the first ALJ's decision from 2000 found that Plaintiff's migraines, depression, and hypertension were all severe impairments. (AR 337.) In the second decision in 2004, the ALJ offered no reason why Plaintiff's hypertension was no longer a severe impairment. The ALJ also offered few reasons why he did not consider Plaintiff's migraines or depression to be severe impairments. The ALJ stated:

> The record shows the claimant has had little treatment since the last decision when Judge Robinson previously found the claimant disabled with a light work capability but an inability to work due to nonexertional difficulties, namely headaches and depression. However, the claimant has not provided convincing evidence to support that these conditions have continued, are disabling, or that she has received any substantial treatment for these

ORDER - 7

> impairments since filing her current application. Indeed, her testimony and pain complaints to doctors refer primarily to her back and leg pain with perfunctory mention of headaches and depression. The record simply does not support the claimant's allegations that headaches and depression now prevent her from performing basic work activities.

(AR at 36) (internal citation omitted). The ALJ also stated that "I specifically do not find support in the record to find claimant as limited as in the prior decision by headaches" and "[n]or does the current record support a finding that claimant is substantially impaired by depression . . . ." Id. Instead, he stated that "I find that she has medically improved since the [2000] decision." Id.

The ALJ's determination that Plaintiff's headaches and depression had "medically improved" since the 2000 decision is not supported by substantial evidence. Social Security regulations define "medical improvement" as:

> Any decrease in the medical severity of [the claimant's] impairments(s) which was present at the time of the most recent favorable medical decision that [the claimant was] disabled or continued to be disabled. . . . A determination that there has been a decrease in medical severity must be based on changes (improvement) in the symptoms, signs, or laboratory findings associated with [claimant's] impairment(s).

20 C.F.R. § 416.994a(c). Here, the ALJ did not point to any changes in the symptoms, signs, or laboratory findings regarding Plaintiff's headaches or depression.

Instead, the ALJ appeared to base the "medical improvement" finding in significant part on a lack of medical records since the first hearing in 2000. As noted above, this problem could have been corrected if the ALJ had fulfilled his duty to fully and fairly develop the record. Notably, Plaintiff testified at the hearing that she had sought emergency room treatment for a migraine just two months earlier. (AR 670.) This testimony obviously suggests that her migraines continued to be a severe impairment.

The ALJ also appeared to base his decision on a perception that Plaintiff had received little treatment for headaches or depression since the 2000 decision. Even assuming that this is true, Social Security rules explicitly require an ALJ to consider reasons why a claimant may have failed to seek treatment. SSR 96-7p provides:

ORDER - 8

> [T]he adjudicator must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment.

Here, the ALJ did not ask Plaintiff any questions at the hearing to explain any perceived failure to seek treatment for headaches or depression, despite the fact that these impairments contributed significantly to ALJ Robinson's disability determination in May 2000.

The record also includes evidence that Plaintiff suffers from incontinence and kidney stones. The ALJ offered no reason why he did not consider those impairments to be severe, either individually or in combination with her other impairments.

Therefore, the Court agrees with Plaintiff that the ALJ erred at step two by: (1) finding that Plaintiff's headaches and depression had medically improved; and (2) failing to offer sufficient reasons why her hypertension, incontinence, and kidney stones were not severe impairments.

4.   <u>The ALJ Erred in Assessing RFC and Evaluating the Evidence From Plaintiff's Physicians</u>

At step four, the ALJ assessed Plaintiff's residual functional capacity (RFC). The ALJ found that Plaintiff retained the capacity to perform a "significant range of light work" – i.e., work that involves lifting up to 20 pounds occasionally and 10 pounds frequently. <u>See</u> 20 C.F.R. § 404.1567(b). The ALJ found that her ability to perform a full range of light work was restricted by postural limitations, including a restriction to jobs that only require "occasional" stooping.

Plaintiff argues that the ALJ's RFC assessment was flawed because he improperly rejected opinions from Dr. Clarence Niles and Dr. Todd Czartoski.

A.   <u>Dr. Niles' Opinion</u>

Dr. Niles was Plaintiff's treating physician. In September 2001, he completed a form in which he opined that Plaintiff: (1) had several severe impairments, including back pain, kidney stones, and uncontrolled hypertension; (2) was limited in sitting, carrying, and standing; and (3) would be unable

ORDER - 9

to work on a full-time basis for 52 weeks. (AR 562-63.) Plaintiff argues that the ALJ failed to offer sufficient reasons to reject Dr. Niles opinions.

"As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant." Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). If the treating doctor's opinion is contradicted by another doctor, the ALJ must offer "specific and legitimate reasons" supported by substantial evidence in the record for so doing. Id.

Here, the ALJ noted Dr. Niles' opinions, but did not specifically state whether or why he was rejecting them. Although the ALJ also discussed opinions from other physicians who did not find Plaintiff as limited as Dr. Niles, the Court agrees that the ALJ failed to offer a sufficiently specific explanation as to why he apparently chose to credit the other physicians opinions over Dr. Niles' opinions.

B.  Dr. Czartoski's Opinion

Dr. Czartoski is an examining physician who saw Plaintiff on March 6, 2004. Although Dr. Czartoski apparently examined Plaintiff before the hearing, his report was not received by ALJ Joyner until after the hearing – thus resulting in the due process problems discussed earlier.

In his report, Dr. Czartoski opined that Plaintiff could perform light work. (AR 603.) However, he also opined that Plaintiff should never be expected to stoop. (AR 604.) The ALJ rejected Dr. Czartoski's opinion regarding Plaintiff's inability to stoop, stating:

> [N]o other medical source has limited the claimant to this extent. The consensus of other medical sources shows that the claimant is capable of light work activity. In fact, the medical expert concurred that the claimant is capable of light work, and I accept his opinion. I therefore find that the record supports that the claimant is able to perform postural activities on an occasional basis rather than not at all as indicated by Dr. Czartoski.

(AR 36) (internal citation omitted.)

"The opinion of an examining doctor, even if contradicted by another doctor, can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." Widmark v. Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006). The ALJ's first reason for not crediting

ORDER - 10

this opinion is simply that "no other medical source has limited the claimant to this extent." The Ninth Circuit has held that an ALJ cannot reject an examining physician's opinion for such a vague reason. In Widmark, for instance, the ALJ rejected an examining physician's opinion regarding the claimant's ability to perform fine manipulation by stating "[n]o other physician has cited any significant restrictions related to right thumb impairment." Id. at 1067. The Ninth Circuit noted that "[t]his merely states a fact does not explain – specifically and legitimately or otherwise – how that fact leads to the conclusion that [the examining physician's] evaluation should be disregarded." Id.

The ALJ's second reason for rejecting Dr. Czartoski's opinion is that "[t]he consensus of other medical sources shows that the claimant is capable of light work activity." However, Plaintiff's ability to perform the exertional requirements of light work (i.e., lift 20 pounds occasionally and 10 pounds frequently) does not lead to a conclusion that she is able to stoop. Indeed, Dr. Czartoski himself opined that Plaintiff "should be able to return to light duty work" (AR 603), but nonetheless found that she should "never be expected to kneel, crouch, crawl, or stoop." (AR 604.)

As a result, the Court agrees with Plaintiff that the ALJ failed to offer sufficient reasons for rejecting Dr. Czartoski's opinion about her inability to stoop.

Plaintiff suggests that if Dr. Czartoski's opinion about her inability to stoop is credited, a finding of disabled is mandatory. Plaintiff points to Tyson v. Apfel, 107 F. Supp.2d 1267 (D. Colo. 2000), where the court held that Social Security Rule (SSR) 96-9p mandates a finding of disabled if a claimant is unable to stoop. However, the Seventh Circuit has specifically rejected such a reading of SSR 96-9p. See Lauer v. Apfel, 169 F.3d 489, 493 (7th Cir. 1999) ("There is no basis to assert that SSR 96-9p requires a finding of disability in cases where a claimant is unable to stoop.") Looking at the plain language of SSR 96-9p, the Court agrees with the Seventh Circuit on this point. This rule provides:

> An ability to stoop occasionally . . . is required in most unskilled sedentary occupations. A *complete* inability to stoop would significantly erode the unskilled sedentary occupational base and a finding that the individual is disabled would usually apply . . . . Consultation with a

ORDER - 11

1
2
vocational resource may be particularly useful for cases where the individual is limited to less than occasional stooping.

Id. (italics in original) (underlining added). Although SSR 96-9p indicates that an inability to stoop

3

"usually" requires a finding of disabled, it does not mandate a finding of disabled, as Plaintiff and the

4

court in Tyson suggested.

5
6
5.  The ALJ Also Committed Clear Error By Failing to Offer Sufficient Reasons To Reject Plaintiff's Testimony Regarding Severity of Pain

7      Although not raised by Plaintiff, the ALJ also committed clear error by failing to offer

8  legally sufficient reasons to reject Plaintiff's testimony about the severity of her pain. At the

9  hearing, Plaintiff testified at length about the pain caused by her impairments and the

10 limitations caused by pain. As the ALJ noted at the hearing, Plaintiff "basically said that she

11 has to rest twice a day for up to two to four hours, one to two hours at a time." (AR 681).

12 However, the ALJ rejected Plaintiff's testimony about the severity of her pain, holding:

13
14
> Given the evidence of record, or the lack thereof, the claimant appears to exaggerate her pain. While I find that her back condition does cause some level of pain, the objective evidence does not support the level of pain the claimant alleges to prevent her from performing all physical activities.

15 (AR 36.)

16
17      Under well-established Ninth Circuit law, "once the claimant produces objective

18 medical evidence of an underlying impairment, an adjudicator may not reject a claimant's

19 subjective complaints based solely on a lack of objective medical evidence to fully corroborate

20 the alleged severity of pain." Bunnell v. Sullivan, 947 F.2d 341, 345 (9th Cir. 1991) (en

21 banc). Many Ninth Circuit cases emphasize this rule. For example, in Light v. Secretary of

22 Social Security Administration, 119 F.3d 789, 792 (9th Cir. 1997), the court noted that "the

23 ALJ disbelieved Light because no objective medical evidence supported Light's testimony

24 regarding the severity of subjective symptoms from which he suffers, particularly pain. An

25 ALJ may not discredit a claimant's subjective testimony on that basis." Instead, "[t]o find

ORDER - 12

that claimant not credible, the ALJ must rely either on reasons unrelated to the subjective testimony (e.g., reputation for dishonesty), on conflicts between his testimony and his own conduct, or on internal contradictions in that testimony." Id.

The Ninth Circuit illustrated this rule in Moisa v. Barnhart, 367 F.3d 882 (9th Cir. 2004), where the court noted:

> Moisa offered evidence demonstrating – and the ALJ found – that Moisa suffered from a series of severe impairments, capable of causing pain. Nevertheless, the ALJ rejected Moisa's pain testimony solely for lack of objective medical evidence corroborating it. He cited no evidence of malingering and made no findings that would allow us to conclude that he rejected the testimony on permissible grounds, such as a reputation for dishonesty, conflicts between the claimant's testimony and his conduct, or internal contradictions in the testimony. His rejection of Moisa's pain testimony was therefore clear error.

Id. at 885 (internal citations omitted.)

The ALJ made the same clear error in this case. As in Moisa, the ALJ: (1) found that Plaintiff suffered from an impairment capable of causing pain, but nonetheless rejected Plaintiff's testimony about the severity of the pain solely due to the lack of objective evidence; and (2) cited no evidence of malingering and made no findings suggesting that he rejected her testimony on permissible grounds.

Where an ALJ fails to offer sufficient reasons to reject a Plaintiff's pain testimony, the reviewing court may in proper circumstances credit the testimony as true. The Ninth Circuit has stated:

> [T]he district court should credit evidence that was rejected during the administrative process and remand for an immediate award of benefits if (1) the ALJ failed to provide legally sufficient reasons for rejecting the evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

Benecke v. Barnhart, 379 F.3d 587, 593 (9th Cir. 2004). Here, the ALJ clearly failed to provide sufficient reasons for rejecting Plaintiff's testimony regarding the severity of her pain. In addition, a vocational expert specifically testified at the second hearing that Plaintiff would

ORDER - 13

1 be unable to perform any jobs if the ALJ accepted Plaintiff's testimony as fully credible. (AR
2 681.) As a result, it is clear from the record that the ALJ would be required to find Plaintiff
3 disabled if her pain testimony were credited as true, leaving no outstanding issues to resolve
4 before making a disability determination.

To be sure, Plaintiff did not discuss this error in her brief on appeal. However, the Court may take notice of clear errors not raised by Plaintiff. See, e.g., Silber v. United States, 370 U.S. 717 (1962) (in exceptional cases, appellate court may take notice of obvious errors not raised by parties).

6. Alleged Errors At Step Five

Finally, Plaintiff argues that the ALJ erred at step five because he failed to question the vocational expert (VE) who testified at the hearing about potential conflicts between the VE's testimony and the Department of Labor's Dictionary of Occupational Titles. Although Plaintiff's argument may have merit, it is not necessary to reach this issue because the Court finds that the evidence in the record supports a finding of disabled.

7. Remedy

Under 42 U.S.C. § 405(g), the Court may enter a judgment "affirming, modifying, or reversing the decision of the Commissioner . . . , with or without remanding the cause for a rehearing." Here, it is apparent that the ALJ's decision must be reversed due to multiple errors. As noted above, it is not necessary to remand for a rehearing if: (1) the ALJ failed to provide legally sufficient reasons for rejecting Plaintiff's evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited. Benecke v. Barnhart, 379 F.3d 587, 593 (9th Cir. 2004).

Among other things, the ALJ failed to provide legally sufficient reasons for rejecting: (a) Plaintiff's testimony regarding the severity of her pain; and (b) Dr. Czartoski's opinion that

ORDER - 14

Plaintiff should never be expected to stoop. In light of these errors, the Court finds no outstanding issues that would need to be resolved before a disability determination could be made. As discussed earlier, the VE testified at the hearing that if the ALJ fully credited Plaintiff's testimony, Plaintiff would not be able to perform any jobs. (AR 681.) While this reason by itself would provide a sufficient basis to find Plaintiff disabled, it should also be noted that: (1) Dr. Czartoski's opinion that Plaintiff is unable to stoop would "usually" require a finding of disabled under SSR 96-9p; and (2) the ALJ failed to offer sufficient reasons to support his finding that Plaintiff's headaches and depression had medically improved since ALJ Robinson's decision in May 2000 – a ruling that ALJ Joyner recognized as the "law of the case" and which had found that Plaintiff was disabled in significant part because her headaches and depression would cause excessive absences from work. As a result, the Court finds that no useful purpose would be served by requiring Plaintiff to undergo another hearing. A rehearing would do little more than add further delay to resolving Plaintiff's application, which was filed six years ago.

Although the Court finds that the record supports a disability determination, it is not clear from the record whether Plaintiff meets the non-disability requirements for SSI benefits. That issue was not resolved in either the first or second ALJ decisions; indeed, as noted earlier, Plaintiff's financial eligibility for SSI benefits was questioned (although not decided) in ALJ Robinson's May 2000 decision. Therefore, the Court remands this matter with instructions to the Commissioner to make a prompt determination on whether Plaintiff meets the non-disability requirements for SSI. See, e.g., Steele v. Barnhart, 2007 WL 151224 at * 5 (W.D. Va. Jan. 18, 2007) (holding that claimant was disabled but remanding for determination regarding financial eligibility for SSI). Plaintiff shall be entitled to an immediate award of benefits if she meets the non-disability requirements during the relevant period.

**Conclusion**

The ALJ committed multiple errors in this matter, including but not limited to failing to provide legally sufficient reasons for rejecting Plaintiff's evidence. The Court finds that there are no outstanding issues that must be resolved before a determination of disability can be made and that it is clear from the record that the ALJ would be required to find Plaintiff disabled if such evidence were credited. The Court finds that the evidence in the record supports a determination of disability and ORDERS that the Commissioner's decision be REVERSED. The Court REMANDS this matter with instructions to the Commissioner to make a prompt determination on whether Plaintiff meets the non-disability requirements for SSI benefits during the relevant time period. Provided that Plaintiff meets the non-disability requirements, she shall be entitled to an immediate award of SSI benefits.

The Clerk is directed to send copies of this order to all counsel of record.

Dated: September 7, 2007.

s/Marsha J. Pechman  
Marsha J. Pechman  
United States District Judge